No. 20999.

TONY ARMIJO *v.* THE PEOPLE OF THE STATE OF COLORADO.
(402 P.2d 79)

Decided May 17, 1965.

218

YAKLICH, DAVIS & O'ROURKE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN P. MOORE, Assistant for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

ARMIJO was convicted by a jury of the crime commonly referred to as assault with a deadly weapon, as such offense is defined in C.R.S. '53, 40-2-34. Thereafter Armijo was sentenced to a term of from two to five years in the State Penitentiary and by the present writ of error he seeks reversal of this judgment and sentence. As ground for reversal Armijo urges, *inter alia,* that the trial court erred in refusing an instruction which he tendered concerning specific intent. Our review of the record convinces us that the trial court committed error in this regard, and because of this error by the trial court the judgment must now be reversed.

As noted, Armijo tendered an instruction on specific intent to the trial court, the gist of the proposed instruction being that before the jury could convict him of assault with a deadly weapon, the jury had to be satisifed beyond a reasonable doubt that he had the specific intent to commit bodily injury upon the person of the alleged victim. The trial court declined to give this ten-

dered instruction, the court being of the opinion that this particular matter was "otherwise covered" by the several instructions which were given the jury by the trial court. If in fact the matter was adequately covered by other instructions, such would be a valid reason for refusing to give Armijo's tendered instruction. However, our study of the instructions leads us to the conclusion that such is not the case.

The distinction in the field of criminal law between a "general intent" and a "specific intent" is a well-recognized one and is of long standing. A given crime may consist of an act combined with a *general* intent or, on the other hand, it may consist of an act combined with a *specific* intent to commit the act, depending entirely upon the particular statute which defines the offense under consideration. Where the statute defining the crime includes a specific intent as an ingredient of its criminality, such specific intent is essential and must be established with the same certainty as any other material element of the crime. See 22 C.J.S. p. 116.

There is no doubt but that in Colorado, as elsewhere, the specific intent to commit bodily injury upon the person of another is a necessary and essential element of the offense known as assault with a deadly weapon. See *People v. Hopper*, 69 Colo. 124, 169 Pac. 152.

In *Shreeves v. People*, 126 Colo. 413, 249 P.2d 1020, a case involving a prosecution for the offense of assault with a deadly weapon where this Court held that as a matter of law the People had failed to establish, *prima facie*, such requisite specific intent, we approved the following applicable language:

"Where a crime consists of an act combined with a specific intent, the intent is just as much an element of the crime as is the act. *In such cases, mere general malice or criminal intent is insufficient,* and the requisite specific intent must be shown as a matter of fact, either by direct or circumstantial evidence. The rule is especially

applicable where a statutory offense, consisting of an act and a specific intent, constitutes substantially an attempt to commit some higher offense than that which accused succeeded in accomplishing. *The general rule, * * * that a criminal intention will be presumed from the commission of the unlawful act does not apply; and proof of the commission of the act does not warrant the presumption that accused had the requisite specific intent. * * *"* (Emphasis supplied.)

As we read the instructions, it appears to us that no instruction was ever given which informed the jury that an essential ingredient of the crime with which Armijo stood charged was the specific intent to commit bodily injury upon the person of another and that it was incumbent upon the People to prove, beyond a reasonable doubt, such a specific intent on the part of Armijo. Instruction number seven which the trial court did give the jury clearly concerned itself with the issue of general intent — as contrasted to specific intent — and instructed the jury, *inter alia,* that such intent could be inferred from the facts and circumstances. This same instruction then went on to advise the jury that the "law warrants the presumption or inference that a person intends the natural results or consequences to follow the act which he intentionally commits . . ." Under *Shreeves v. People, supra,* such language is inapplicable where a crime consists of an act combined with a specific intent, as opposed to a general intent.

Hence, we deem it abundantly clear that the instruction which was given the jury concerned itself with the issue of general intent only. Thus, there was no instruction which advised the jury that a *specific* intent to commit bodily injury was an essential ingredient of the offense charged and that in connection therewith the People had the burden of proving such specific intent beyond a reasonable doubt. By his tendered instruction Armijo drew this matter to the attention of the trial

court. Under these circumstances we therefore hold that the trial court erred in refusing the tendered instruction, for the very simple reason that the matter of specific intent was *not* "otherwise covered."

In our view under the circumstances disclosed by the record this omission is not a trivial or non-prejudicial matter. The record discloses that the defendant and the alleged victim were total strangers and that there was no altercation or argument of any type which preceded the alleged assault. In fact, there was no direct evidence that the defendant was the assaulter.

Judgment reversed and cause remanded with directions that further proceedings, if any, be consistent with the views herein expressed.

MR. JUSTICE MOORE and MR. JUSTICE SCHAUER dissent.

MR. JUSTICE SCHAUER dissenting:

The defendant was tried and convicted of the charge of:

"* * * did then and there feloniously, unlawfully, wilfully and maliciously make an assault upon Roberta J. Urbina with a deadly weapon, instrument or other thing, namely, a sharp and deadly instrument, then and there had and held, with intent then and there feloniously, unlawfully, wilfully and maliciously to commit a bodily injury upon the person of said Roberta J. Urbina, no considerable provocation then and there appearing for the said assault, and the circumstances thereof then and there showing an abandoned and malignant heart in him, the said Tony Armijo; * * *."

At the trial of the case the defendant tendered the following instruction:

"The court instructs you that before you can find the defendant guilty of the charge contained in the information you must be satisfied beyond a reasonable doubt that the defendant had the specific intent to commit a bodily injury upon the person of the complaining witness." which was "Refused as covered."

The court did give sixteen instructions in the usual manner, seven of which, in whole or in part, are as follows:

"INSTRUCTION NO. 1

"* * * charges that * * * make an assault upon Roberta J. Urbina with a deadly weapon * * * with intent then and there feloniously, unlawfully, wilfully and maliciously to commit a bodily injury upon the person * * *.

"And this, Members of the Jury, are the issues you are called upon to determine."

"INSTRUCTION NO. 2
* * *

"A crime consists of a violation of a public law in the commission of which there shall be an union or joint operation of act and intention."

"INSTRUCTION NO. 4
* * *

"If from the evidence in this case, or the lack of evidence, you entertain a reasonable doubt as to any material fact necessary to constitute the offense charged, then it will be your duty to give the defendant the benefit of such doubt and acquit him."

"INSTRUCTION NO. 6

"The burden of proof is upon the people to prove each and every material allegation contained in the information, to your satisfaction beyond a reasonable doubt, * * * you will find the defendant not guilty. * * *."

"INSTRUCTION NO. 7

"The court instructs the jury that it devolves upon the prosecution to prove the intent in this case to your satisfaction beyond a reasonable doubt, * * *.

"The law warrants the presumption or inference that a person intends the natural results or consequences to follow the act which he intentionally commits, and which ordinarily do follow such acts."

"INSTRUCTION NO. 8

"* * * with an intent to commit upon the person of another a bodily injury * * *."

## "INSTRUCTION NO. 16
#### \* \* \*

"No single one of these instructions states all the law applicable to the case, but all of these instructions must be taken, read and considered together, as they are connected with and related to each other as a whole."

The jury returned a verdict reading in pertinent part:

"We, the jury, find the defendant, Tony Armijo, Guilty of Assault with a deadly weapon with intent to do bodily injury, in manner and form as charged in the information."

The crux of the majority opinion as a basis for reversal is found in two statements:

"As we read the instructions, it appears to us that no instruction was ever given which informed the jury that an essential ingredient of the crime with which Armijo stood charged was the specific intent to commit bodily injury upon the person of another and that it was incumbent upon the People to prove, beyond a reasonable doubt, such a specific intent on the part of Armijo.\* \* \*."

"\* \* \* Thus, there was no instruction which advised the jury that a *specific* intent to commit bodily injury was an essential ingredient of the offense charged and that in connection therewith the People had the burden of proving such specific intent beyond a reasonable doubt. \* \* \*."

The jury was told in Instruction No. 1:

"\* \* \* with intent then and there feloniously, unlawfully, wilfully and maliciously to commit a bodily injury \* \* \*."

This was followed by Instruction No. 2, quoted above, and then, among other instructions, they were told in No. 6:

"\* \* \* to prove each and every material allegation in the information \* \* \*."

To say that it was error to refuse defendant's tendered Instruction No. 1 in the light of the instructions given is to suggest that the defendant is entitled to a

repetition of his theory of his defense. In this case the jury was in fact instructed on the element of specific intent. Therefore, it was not error to refuse defendant's tendered Instruction No. 1, the content of which was contained in the instructions given. In *Polly v. People,* 107 Colo. 6, 108 P.2d 220, this court stated:

"\* \* \* The reiteration of this element in instruction No. 15 somewhat overemphasizes that phase of the case. We suggest that fairness and impartiality can perhaps better be served by not singling out the defendant in more than one instruction relating to the interest he or she may have in the result. \* \* \*."

I submit that this is an understatement of the situation in the case at bar. A fair and impartial trial does not submit to repetition and overemphasis of one theory or element of the case.

To suggest that the jury was not given a "clear cut" instruction on specific intent is as ill-founded as to argue that the victim in this case did not receive a "clear cut" down her back, through her garments, both above and below the waist, requiring twenty-four stitches. One might well ask, in the light of human experience, what on earth did the defendant intend? I seriously doubt that the jury was confronted with the possible intent of an expression of love and affection.

In *Lutz v. People,* 133 Colo. 229, 293 P.2d 646, it was said:

"\* \* \* No error is committed if a trial court refuses to give a requested instruction, but covers the subject matter of the refused instruction by one which is submitted to the jury. \* \* \*."

This language was drawn from the rule announced in *Reigan v. People,* 120 Colo. 472, 210 P.2d 991.

From the evidence in the case at bar the jury quite properly could have concluded that defendant intended to cut the young lady, and since it is undisputed that Miss Urbina was in fact cut, the evil intent follows the act of the defendant.

The majority opinion cites as authority the cases of *Shreeves v. People,* 126 Colo. 413, 249 P.2d 1020, and *People v. Hopper,* 69 Colo. 124, 169 Pac. 152. It is here respectfully submitted that these two cases do not lend support to a position of reversal of the instant case. The two cases clearly and unequivocally support the accepted rule that specific intent, as an element, must be charged and proved. The cases do not call for reiteration or overemphasis by instruction to the jury of one of the elements of the crime charged.

In *Peterson v. People,* 133 Colo. 516, 297 P.2d 529, this court held:

"The gist of the crime charged is the state of mind of defendant at the time of the alleged assault. This state of mind or intent is usually manifested by circumstances and proof thereof necessarily is by circumstantial evidence, and, of course, such intent is ordinarily inferable from the facts. This is made so because the state of mind of the assailant is concealed within the mind and is not usually, and we might say never, susceptible of direct proof."

It is submitted that, upon consideration of the instructions as a whole, the jury was sufficiently instructed as to the essential ingredients of the offense charged and as to the burden of proof resting upon the prosecution. In fact, essential ingredients and burden of proof together receive attention no less than ten times in the sixteen instructions given by the court. Moreover, the specific intent requirement again appears in the verdict.

I respectfully dissent.

MR. JUSTICE MOORE authorized me to state that he joins in this dissent.