No. C-512

**Grant Judkins v. Sheryl A. Carpenter**

(537 P.2d 737)

Decided June 23, 1975.

Fischer, Wilmarth & Hasler, G. William Beardslee, for petitioner.

Riffenburgh, Nelson & Porter, Alan R. Porter, for respondent.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

We granted certiorari to the Colorado Court of Appeals as to its opinion in *Columbia Savings and Loan Association v. Carpenter and Judkins*, 33 Colo. App. 360, 521 P.2d 1299 (1974). We agree with the dissent in that case and reverse.

This was an interpleader action brought by the Columbia Savings and Loan Association to determine the ownership of a savings account. The account had been in the name of Marion Judkins, mother of the petitioner and grandmother of the respondent. On March 13, 1972, the grandmother signed a card placing the account in the names of the grandmother and the granddaughter, in joint tenancy with right of survivorship. The grandmother died on April 13, 1972. The grandmother and the granddaughter had resided in the same residence on, and prior to, March 13, 1972, and had a close relationship.

The case was tried to the court. In addition to a further conclusion which will be discussed later, the court made the following conclusions: that the son established a confidential relationship between the grandmother and the granddaughter; that this shifted the "burden of proof" to the granddaughter "to show by a preponderance of the evidence that she did not exert undue influence on" the grandmother; that the granddaughter did not overcome the presumption of undue influence by a preponderance of the evidence; and that on March 13, 1972, the grandmother

lacked requisite mental capacity to make the change in the account.

While the court of appeals reversed the trial court's judgment, it agreed with the trial court's conclusion that there was a confidential relationship.

■ In the majority opinion of the court of appeals, there is an excellent discussion of the difference between *Hilliard v. Shellabarger*, 120 Colo. 441, 210 P.2d 441 (1949) (followed in *Bohl v. Haney*, 28 Colo. App. 55, 470 P.2d 603 (1970)), on the one hand, and *Lesser v. Lesser*, 128 Colo. 151, 250 P.2d 130 (1952), on the other. In *Shellabarger*, it was stated:

"*At the time the deed was signed was there a fiduciary relationship existing between the aged and infirm grantor and the grantees which raised a presumption of undue influence in the procurement of the deed, requiring defendants to assume the burden of proving the transaction to have been in fact fair, just, and reasonable?*

"This question must be answered in the affirmative."

In *Bohl*, the court of appeals distinguished *Shellabarger* from *Lesser* because the word "fraud" was used in *Shellabarger*. However, this term arose in the discussion of authorities cited, and insofar as we are concerned here, *Shellabarger* and *Lesser* are indistinguishable on the facts.

Rescission of a deed was involved in *Lesser*. The court held in effect that the burden of proof is upon him who seeks rescission. It further held that the confidential relationship between father and son raised a presumption of undue influence and placed upon the grantee of the deed the burden of going forward. *Lesser* controls and the quoted language in *Shellabarger* is rejected.

It is to be implied in the opinion of the majority of the court of appeals that it concluded that the granddaughter had rebutted the presumption. It also concluded that the evidence was insufficient to support an independent finding of undue influence and that there was insufficient evidence to support the trial court's finding of insufficient mental capacity. It, therefore, reversed the trial court.

We agree with the dissent in the court of appeals which reads as follows:

"I agree with the majority opinion in the analysis of prior decisions relating to the presumption of undue influence. However, I interpret the trial court's findings to be that, irrespective of the presumption, it found by a preponderance of the evidence that decedent made the subject gift as a result of the undue influence of appellant. In my view there is sufficient evidence in the record to support that finding. I would therefore affirm the judgment."

As already indicated, the majority opinion correctly ruled that the trial court was in error, after finding that a confidential relationship existed, and placing the burden of proof — as distinct from the burden of

going forward with the evidence — upon the granddaughter.

The burden of proof, which rests upon a party to establish the truth of a given proposition, never shifts. Once the person having the burden of proof has established a prima-facie case, the burden of going forward shifts to the other side. "[I]t then becomes the duty of the defendant to go forward with his testimony. But in no sense does such presumption cast the burden [of proof] on the defendant. . . . The burden to establish his case does not shift from the plaintiff to the defendant, but continues throughout the trial." *White v. Hurlbut Grocery Co.*, 62 Colo. 483, 162 P. 1143 (1917), quoted in *American Insurance Company v. Naylor*, 101 Colo 34, 70 P.2d 349 (1937).

We can assume *arguendo* that a confidential relationship between the grandmother and granddaughter was established. It follows that this created a rebuttable presumption that the granddaughter exercised undue influence over the grandmother. We can further assume *arguendo* that the testimony of the granddaughter, to the effect that it was the grandmother's idea that the account pass to the granddaughter upon the grandmother's death, was sufficient to rebut the presumption.

In addition to the trial court's conclusion that the granddaughter did not overcome the presumption, the court continued:

"The evidence most credible to the Court proves by a preponderance of the evidence that there was undue influence exerted upon Marion D. Judkins on March 13, 1972, by defendant, Sheryl A. Carpenter. . . ."

To us, this means that the son sustained his burden of proving that the transfer resulted from undue influence by the granddaughter. There was sufficient evidence to support his conclusion. The court found: Earlier the grandmother had conveyed her personal residence and belongings to the granddaughter and her husband, reserving a life estate. This retained life estate created close personal interests in the premises between the grandmother and granddaughter. Until the matter of this transfer was involved, the grandmother always sought legal advice in business matters, including the conveyance of the residence; but she did not have legal advice in this instance. The granddaughter and her husband were experiencing difficult financial problems, and it was for this reason that they were living at the grandmother's residence.

Also in the findings are the following: The grandmother had been a Christian Scientist, and when she moved to a Christian Science Nursing Home on March 4, 1972, she knew of its rules and regulations prohibiting the use of medications. The granddaughter, however, brought medications to the grandmother, and, as a result, the grandmother was expelled from the nursing home and commenced living again with the granddaughter and her husband. On the day after her return from the nursing home, the granddaughter presented to her grandmother the signature card for execution and obtained the signature. The granddaughter's husband mailed the card to the savings and loan association. The grandmother was in poor physical health and periodically had a changeable and confused mental

state. As mentioned, she died one month after signing the card.

As we rule that the trial court's judgment should be affirmed on the basis of the son's sustaining the burden of proof as to undue influence, we do not reach the question of the sufficiency of the evidence to support the trial court's conclusion that the grandmother lacked requisite mental capacity.

The cause is remanded to the court of appeals for its affirmance of the judgment.

MR. JUSTICE HODGES and MR. JUSTICE LEE do not participate.